Christopher B. Ghio (State Bar No. 259094)
Christopher Celentino (State Bar No. 131688)
Yosina M. Lissebeck (State Bar No. 201654)
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Telephone: 619.400.0500
Facsimile:  619.400.0501
christopher.ghio@dinsmore.com
christopher.celentino@dinsmore.com
yosina.lissebeck@dinsmore.com

Sarah S. Mattingly (Ky. Bar 94257 – Admitted pro hac vice)
**DINSMORE & SHOHL LLP**
101 S. Fifth Street, Suite 2500
Louisville, KY 40202
Telephone: 859-425-1096
Facsimile: 502-585-2207
Sarah.mattingly@dinsmore.com

*Special Counsel to Richard A. Marshack, Chapter 11 Trustee*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>    Debtor. | Case No. 8:23-bk-10571-SC<br><br>Chapter 11<br><br>Adv. Proc. No. _____<br><br>**COMPLAINT FOR:** |
| RICHARD A. MARSHACK,<br>Chapter 11 Trustee,<br><br>         Plaintiff,<br><br>    v.<br><br>CLEAR VISION FINANCIAL LLC,<br>d/b/a Liberty1 Financial<br><br>         Defendant. | **(1) AVOIDANCE, RECOVERY, AND PRESERVATION OF 2-YEAR ACTUAL FRAUDULENT TRANSFERS;**<br><br>**(2) AVOIDANCE, RECOVERY, AND PRESERVATION OF 2-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS;**<br><br>**(3) AVOIDANCE, RECOVERY, AND PRESERVATION OF 4-YEAR ACTUAL FRAUDULENT TRANSFERS;**<br><br>**(4) AVOIDANCE, RECOVERY, AND PRESERVATION OF 4-YEAR** |

1

| | |
|---|---|
| | **CONSTRUCTIVE FRAUDULENT TRANSFERS;** |
| | **(5) AVOIDANCE, RECOVERY AND PRESERVATION OF PREFERENTIAL TRANSFER MADE WITHIN NINETY DAYS OF THE PETITION DATE;** |
| | **(6) TURNOVER; AND** |
| | **(7) DISALLOWANCE OF CLAIMS** |
| | Judge: Hon. Scott C. Clarkson |

For his *Complaint for (1) Avoidance, Recovery, and Preservation of 2-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, and Preservation of 2-Year Constructive Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of 4-Year Actual Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of 4-Year Constructive Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Preferential Transfer; (6) Turnover; and (7) Disallowance of Claims* ("Complaint"), plaintiff Richard A. Marshack, the Chapter 11 Trustee ("Trustee" or "Plaintiff") for the bankruptcy estate ("Estate") of debtor The Litigation Practice Group P.C. ("Debtor" or "LPG") in the above-captioned bankruptcy case ("Bankruptcy Case"), alleges and avers as follows:

**STATEMENT OF JURISDICTION, NATURE OF PROCEEDING, AND VENUE**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(2)(A), (b)(2)(B), (E), (H) and (O), 1334(b), and General Order No. 13-05 of the District Court for the Central District of California because this is a core proceeding arising in and/or related to the Bankruptcy Case, which is a case under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"), and which is pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("Bankruptcy Court").

///

2

2. Regardless of whether this proceeding is core, non-core, or otherwise, Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court.

3. Defendant is notified that Rule 7008 of the Federal Rules of Bankruptcy Procedure requires Defendant to plead whether consent is given to the entry of a final order and judgment by the Bankruptcy Court.

4. Venue of this adversary proceeding properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a) because this proceeding is related to Debtor's pending Bankruptcy Case.

## THE PARTIES

5. Plaintiff Richard A. Marshack is the duly appointed, qualified, and acting Chapter 11 Trustee of Debtor's Estate.

6. Debtor is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Tustin, California.

7. Defendant Clear Vision Financial LLC, d/b/a Liberty1 Financial ("Defendant") is, and at all material times represented that it was, a foreign limited liability company, existing, and under the laws of the State of Wyoming.

8. Defendant may be served by first class mail postage prepaid upon its registered agent at 1401 21st St., Ste R, Sacramento, CA 95811 or its Managing Director, Todd Betlejewski at 1 Corporate Park, Ste 200, Irvine, CA 92606 and 1401 21st St., Ste R, Sacramento, CA 95811.

## GENERAL ALLEGATIONS

**A.    The Bankruptcy Case**

9. On March 20, 2023 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Title 11 of the United States Code, commencing the Bankruptcy Case.

10. The Office of the United States Trustee ("UST") filed its *Motion by United States Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)*

[Bankr. Docket No. 21] and creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, & 1112, or in the Alternative Convert This Case to Chapter 7 or Appoint a Trustee* [Bankr. Docket No. 44]. On May 4, 2023, the Court entered its *Order Directing United States Trustee to Appoint Chapter 11 Trustee* [Bankr. Docket No. 58].

11. Pursuant to the *Acceptance of Appointment as Chapter 11 Trustee* [Bankr. Docket No. 63], on May 8, 2023, Trustee accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case, and he continues to serve in this capacity at this time. The Court approved the Trustee's appointment in its *Order Approving the U.S. Trustee's Application for the Appointment of a Chapter 11 Trustee* [Docket No. 65].

12. Trustee was not appointed until after events of the case and, therefore, bases these allegations on information and belief. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, 2014 WL 12610195, at *5 (C.D. Cal. Aug. 7, 2014) (recognizing that the plaintiff's "information and belief" pleading was allowed and "necessary at times"); *see also Mireskandari v. Daily Mail and General Trust PLC*, 2013 U.S. Dist. LEXIS 194437, 2013 WL 12129642, at *4 (C.D. Cal. July 31, 2013) ("The Federal Rules of Civil Procedure allow parties to plead facts on 'information and belief' if the facts 'will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'" (citations omitted)).

13. Plaintiff brings this action solely in his capacity as the Chapter 11 Trustee for the benefit of Debtor's Estate and its creditors.

**B.  LPG**

14. LPG operated a law firm for consumers across the country who sought assistance in contesting or resolving debts they would identify.

15. The consumers would pay LPG over a period of time via monthly debits from their bank accounts.

16. The monthly payments were meant to cover all legal services LPG provided to the consumers including validation of the debts, review of documents to determine enforceability, and court appearances to halt lawsuits to obtain judgments.

17. In certain instances, LPG would file a lawsuit in an effort to eliminate a disputed debt or to prosecute affirmative claims held by the consumers.

18. LPG mismanaged the consumers' monthly payments.

19. To obtain consumer clients, LPG contracted with marketing companies, who engaged in illegal capping.

20. The marketing companies would advertise to or call to solicit them to become clients of LPG.

21. The marketing affiliate went so far as to assist with the execution of an engagement letter between the consumer and LPG.

22. In exchange, LPG agreed to pay the marketing affiliates a percentage the monthly payments collected by LPG from the consumers to LPG.

23. Because LPG received payments from consumers over time, it often sought financing by borrowing against its future cash flow. This borrowing was not only used to finance operations at LPG, but also to pay the fees owed to the marketing companies for providing the client referrals.

24. Many of the documents executed in connection with such financing describe the transactions as account receivable purchase agreements.

///

///

///

### C. Defendant

25. Defendant was one of the marketing companies that procured clients for LPG.

26. LPG agreed to pay, and in fact paid, Defendant a portion of the monthly payments received from consumers referred by Defendant.

27. Defendant also entered into agreements pursuant to which it purported to purchase accounts receivable from LPG. Pursuant to these agreements, Debtor purported to sell to Defendant a portion of its income stream.

#### i. Affiliate Agreement

28. Based upon the Trustee's review of the banking transactions between Defendant and Debtor, Debtor entered into an affiliate agreement with Defendant ("Affiliate Agreement"). A true and accurate copy of the summary of the banking transaction history is attached hereto as **Exhibit 1** and incorporated here ("Transaction History").

29. Based upon the Trustee's review of the Transaction History, the Affiliate Agreement provides Defendant owns and operates a system of generating leads consisting of consumers interested in the legal services offered by LPG.

30. Pursuant to the Affiliate Agreement, Defendant generated leads consisting of consumers interested in the legal services offered by LPG and referred those consumers to Debtor.

31. Defendant went so far as to assist with the execution of an engagement letter with the consumer.

32. In exchange for the referrals, Debtor paid Defendant on a weekly basis. *See* Transaction History.

33. The Affiliate Agreement violates Sections 6151 and 6155 of the California Business and Professional Code, which prohibit referrals of potential clients to attorneys unless registered with the State Bar of California. CAL. BUS. & PROF. CODE § 6155. "Referral activity" includes "any entity 'which, in person,

electronically, or otherwise, refers the consumer to an attorney or law firm not identified' in the advertising." *Jackson v. LegalMatch.com*, 42 Cal. App. 5th 760, 775 (2019). A referral includes receiving information from potential clients and sending that information to lawyers, even when the advertiser does not advertise the name of the attorneys and the clients do not clear the name of the potential attorney after the referral occurred. *Id.*

34. Further, if any effect of an agreement is to accomplish an unlawful purpose, the agreement may be declared illegal regardless of the intention of the parties. *Stockton Morris Plan Co. v. Cal. Tractor & Equip. Corp.*, 112 Cal. App. 2d 684, 690 (1952) (citing *Fewel & Dawes, Inc. v. Pratt*, 17 Cal. 2d 85, 91 (1941)). This remains true regardless of whether the contract has been performed. *Stevens v. Boyes Hot Springs Co.*, 113 Cal. App. 479 (1931) (A contract by a corporation to purchase its own stock has the effect of illegally withdrawing and paying to a stockholder a part of the capital stock of the corporation and is illegal and void, regardless of the fact that the contract is fully performed by the sellers and partially performed by the corporation.); *Mansfield v. Hyde*, 112 Cal. App. 2d 133 (1952), overruled, *Fomco, Inc. v. Joe Maggio, Inc.*, 8 Cal. Rptr. 459 (1960) (Where object of statute requiring licenses is to prevent improper persons from engaging in particular activity, or is for purpose of regulating occupation or business for protection of public, imposition of penalty amounts to prohibition against engaging in occupation or business without license, and contract made by unlicensed person in violation of statute is invalid.); *Firpo v. Murphy*, 72 Cal. App. 249 (1925) (A contract to pay commissions to a real estate broker is illegal and he is not entitled to recover thereon where he fails to secure the license required by law to carry on his business.).

35. Because the Affiliate Agreement violates California law, it is void, unenforceable, and subject to avoidance as fraudulent. Any alleged consideration provided to Debtor under the ARPA Agreements (as defined below) was unlawful.

///

36. Unlawful consideration is that which is "(1) contrary to an express provision of law; (2) contrary to the policy of express law, though not expressly prohibited; or (3) otherwise contrary to good morals." Cal. Civ. Code § 1667. "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." Cal. Civ. Code § 1608.

### ii. Account Receivable Purchase Agreements

37. On or about November 7, 2022, Defendant entered into an Account Receivable Purchase Agreement with Debtor ("ARPA 1"). A true and accurate copy of ARPA 1 is attached as **Exhibit 2** and incorporated here.

38. On or about November 17 2022, Defendant entered into an Account Receivable Purchase Agreement with Debtor ("ARPA 2"). A true and accurate copy of ARPA 2 is attached here as **Exhibit 3** and incorporated here.

39. On or about December 21, 2022, Defendant entered into an Account Receivable Purchase Agreement with Debtor ("ARPA 3"). A true and accurate copy of ARPA 3 is attached here as **Exhibit 4** and incorporated here.

40. On or about January 6, 2023, Defendant entered into an Account Receivable Purchase Agreement with Debtor ("ARPA 4"). A true and accurate copy of ARPA 4 is attached here as **Exhibit 5** and incorporated here.

41. On or about January 25, 2023, Defendant entered into an Account Receivable Purchase Agreement with Debtor ("ARPA 5"). A true and accurate copy of ARPA 5 is attached here as **Exhibit 6** and incorporated here.

42. On or about February 6, 2023, Defendant entered into an Account Receivable Purchase Agreement with Debtor ("ARPA 6"). A true and accurate copy of ARPA 6 is attached here as **Exhibit 7** and incorporated here.

43. On or about February 22, 2023, Defendant entered into an Account Receivable Purchase Agreement with Debtor ("ARPA 7"). A true and accurate copy of ARPA 7 is attached here as **Exhibit 8** and incorporated here.

///

44. On or about February 28, 2023, Defendant entered into an Account Receivable Purchase Agreement with Debtor ("ARPA 8"). A true and accurate copy of ARPA 8 is attached here as **Exhibit 9** and incorporated here.

45. ARPA 1, ARPA 2, ARPA 3, ARPA 4, ARPA 5, ARPA 6, ARPA 7, and ARPA 8 are referred to collectively hereinafter as the "ARPA Agreements."

46. Pursuant to the ARPA Agreements, Debtor purported to sell Defendant streams of monthly payments from consumers that were supposed to be held until earned.

47. By entering into the ARPA Agreements, Debtor and Defendant violated federal and state laws by selling unearned legal fees or funds there were supposed to be held in trust or used for the benefit of consumers.

48. The effect of the ARPA Agreements was to accomplish an unlawful purpose. Thus, the agreement may be declared illegal regardless of the intention of the parties. *Stockton Morris Plan Co. v. Cal. Tractor & Equip. Corp.*, 112 Cal. App. 2d 684, 690 (1952) (citing *Fewel & Dawes, Inc. v. Pratt*, 17 Cal. 2d 85, 91 (1941)). This remains true regardless of whether the contract has been performed. *Stevens v. Boyes Hot Springs Co.*, 113 Cal. App. 479 (1931) (A contract by a corporation to purchase its own stock has the effect of illegally withdrawing and paying to a stockholder a part of the capital stock of the corporation and is illegal and void, regardless of the fact that the contract is fully performed by the sellers and partially performed by the corporation.); *Mansfield v. Hyde*, 112 Cal. App. 2d 133 (1952), overruled, *Fomco, Inc. v. Joe Maggio, Inc.*, 8 Cal. Rptr. 459 (1960) (Where object of statute requiring licenses is to prevent improper persons from engaging in particular activity, or is for purpose of regulating occupation or business for protection of public, imposition of penalty amounts to prohibition against engaging in occupation or business without license, and contract made by unlicensed person in violation of statute is invalid.); *Firpo v. Murphy*, 72 Cal. App. 249 (1925) (A contract to pay

///

commissions to a real estate broker is illegal and he is not entitled to recover thereon where he fails to secure the license required by law to carry on his business.).

49. Because the ARPA Agreements violate federal and state laws, they are void, unenforceable, and subject to avoidance as fraudulent. Any alleged consideration provided to Debtor under any of the ARPA Agreements were unlawful.

50. Unlawful consideration is that which is: "(1) contrary to an express provision of law; (2) contrary to the policy of express law, though not expressly prohibited; or (3) otherwise contrary to good morals." Cal. Civ. Code § 1667. "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." Cal. Civ. Code § 1608.

### D. Payments to Defendant

51. During the applicable reach-back period, Debtor paid Defendant the sum of at least $452,252.99 between December 2022 and March 2023 ("Transfers"). A true and accurate list of the known payments made by Debtor to Defendant is attached as **Exhibit 1**.

52. Additionally, $412,242.56 of the Transfers from Debtor to Defendant occurred during the 90 day preference period ("Preference Transfers"). True and accurate copies of the summaries of the banking transaction histories are attached hereto as **Exhibit 10** and incorporated here.[2]

### E. LPG's Prepetition Creditors

53. Debtor was insolvent when each Transfer was made. This insolvency is evidenced in part by the fact that 14 separate UCC-1 statements were of record securing debts of the Debtor as of September 1, 2022. These statements remained unreleased as of the Petition Date. These statements either reflected secured liens against the Debtor's assets then owned or thereafter acquired, or provided evidence of the assignment or sale of substantial portions of the Debtor's future income.

---

[2] $332,142.87 of the Preference Transfers were made under the name Clear Vision Financial LLC and $80,099.69 of the Preference Transfers were made under the name Liberty1 Financial.

54. When the Transfer were made, these prior UCC-1 statements secured the repayment of the following claimed amounts that are currently known to Trustee and are allegedly owed by the Debtor: (i) $2,374,004.82 owed to Fundura Capital Group as evidenced by Proof of Claim No. 335 purportedly secured by a UCC statement filed on or about May 19, 2021; (ii) approximately $15 million dollars owed to MNS Funding, LLC as evidenced by Proof of Claim No. 1060 purportedly secured by a UCC statement filed on or about May 28, 2021; (iii) approximately $5,000,000 owed to Azzure Capital, LLC as evidenced by Proof of Claim No. 127 secured by a UCC statement filed on or about May 28, 2021; and (iv) approximately $1.5 million dollars owed to Diverse Capital, LLC purportedly secured by UCC statements filed on or about September 15, 2021 and December 1, 2021.[1]

55. As alleged above, LPG was borrowing against its assets and future income, often on unfavorable terms, not only to finance operations at LPG, but also to pay the fees owed to the marketing affiliates for providing it with consumer clients. Pursuant to the agreements with the marketing companies, significant percentages of future payments were already promised to be paid to the marketing affiliates from whatever future income the Debtor would receive.

56. In addition, on Debtor's Schedule E/F [Bankr. Docket No. 33], Debtor scheduled 11 unsecured creditors with priority unsecured claims totaling $374,060.04. These priority unsecured creditors include Indiana Dept. of Revenue, Dept. of Labor and Industries, Arizona Dept. of Economic Security, Arkansas Dept. of Finance & Admin., California Franchise Tax Board, Georgia Dept. of Labor, Internal Revenue Service, Mississippi Dept. of Revenue, Nevada Dept. of Taxation, Utah State Tax Commission, and Wisconsin Dept. of Revenue (collectively, "Priority Unsecured Creditors").

///

---

[1] Trustee reserves all rights, claims, and defenses with respect to these and any other purported secured or unsecured claims.

57. Another group of creditors that Debtor listed on its Schedule E/F [Bankr. Docket No. 33] are nonpriority unsecured creditors. Those 58 creditors have scheduled claims totaling $141,439,158.05 and include Ajilon; Anthem Blue Cross; Azevedo Solutions Groups, Inc.; Carolina Technologies & Consulting Invoice; Collaboration Advisors; Credit Reporting Service Inc.; CT Corporation – Inv.; Debt Pay Pro; Document Fulfillment Services; EnergyCare, LLC; Exela Enterprise Solutions; First Legal Network, LLC; GHA Technologies Inc.; Harrington Electric, Inc.; Imagine Reporting; Juize, Inc.; Krisp Technologies, Inc.; Liberty Mutual; Marc Lemauviel – Allegra; MarkSYS Holdings, LLC; Netsuite-Oracle; Pitney Bowes; Rapid Credit, Inc.; SBS Leasing A Program of De Lage Landen; Security Solutions; Sharp Business Systems; Streamline Performance, Inc.; Thomson Reuters; Twilio, Inc.; Nationwide Appearance Attorneys; Executive Center, LLC; Outsource Accelerator, Ltd.; TaskUs Holdings, Inc.; Marich Bein, LLC; Validation Partners; MC DVI Fund 1, LLC; MC DVI Fund 2, LLC; Debt Validation Fund II, LLC; Tustin Executive Center; LexisNexus; JP Morgan Chase; Business Centers of America; Michael Schwartz; Anibal Colon Jr.; Kathleen Lacey; David Ulery; Kimberly Birdsong; Kevin Carpenter; Karen Suell; Gloria Eaton; Carolyn Beech; Debra Price; Kenneth Topp; Darcey Williamson, Trustee; James Hammett; Johnny Rizo; Beverly Graham; Kathleen Scarlett; and Geneve and Myranda Sheffield (collectively, the "Nonpriority Unsecured Creditors" and, together with the Secured Creditors and Priority Unsecured Creditors, "Prepetition Creditors").

## FIRST CLAIM FOR RELIEF

**Count I - Avoidance, Recovery, and Preservation of Actual Fraudulent Transfers**

**[11 U.S.C. §§ 548(a)(1)(A), 550, and 551]**

58. Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 56 as though set forth in full.

///

59. The Affiliate Agreement, ARPA Agreements, and all or a portion of the Transfers occurred within the two years prior to the Petition Date.

60. On or after the date that such agreements were executed and the Transfers were made, entities to which Debtor was or became indebted include the Prepetition Creditors.

61. The Transfers happened while Debtor was insolvent or rendered Debtor insolvent.

62. Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to pay Defendant sums received from consumers under the Affiliate Agreement, which constitutes an illegal capping agreement between Defendant and Debtor. Any obligation of the Debtor arising from such agreement is also avoidable as fraudulent.

63. Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to sell or transfer portions of its accounts receivable to Defendant, which is illegal under federal and state laws.

64. Because the referrals from Defendant to Debtor are illegal under federal and state law, they are void. Moreover, any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value

65. The Affiliate Agreement, ARPA Agreements, and the Transfers of Debtor's funds are available as fraudulent pursuant to 11 U.S.C. §§ 548(a)(1)(A), 550, and 551 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against its Estate under 11 U.S.C. § 502 or that were not and are allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

66. The Affiliate Agreement, ARPA Agreements, and Transfers should be avoided as fraudulent under 11 U.S.C. § 548(a)(1)(A), and such transferred property,

or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

## SECOND CLAIM FOR RELIEF

**Avoidance, Recovery, and Preservation of Constructive Fraudulent Transfers Against Defendant**

**[11 U.S.C. §§ 548(a)(1)(B), 550, and 551]**

67. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 56 as though set forth in full.

68. The Affiliate Agreement, ARPA Agreements, and all or a portion of the Transfers occurred within the two years prior to the Petition Date.

69. On or after the date that such agreements were executed and such Transfers were made, entities to which Debtor was or became indebted include the Prepetition Creditors.

70. The Transfers happened while Debtor:

   a. was insolvent or became insolvent was a result;

   b. was engaged or was about to engage in a transaction for which any property remaining with Debtor was of unreasonably small capital; or

   c. intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

71. Because the referrals from Defendant to Debtor are illegal under federal and state law, they are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent.

72. Because the sale of the accounts receivable from Debtor to Defendant are illegal under federal and state law, they are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which

cannot constitute reasonably equivalent value. Thus, at the time of the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

73.	The Affiliate Agreement, ARPA Agreements, and the Transfers should be avoided as fraudulent under 11 U.S.C. § 548(a)(1)(B), and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

## THIRD CLAIM FOR RELIEF

**Avoidance, Recovery, and Preservation of Actual Fraudulent Transfers Against Defendant**

**[11 U.S.C. §§ 544(b), 550, and 551; CAL. CIV. CODE §§ 3439.04(a) and 3439.07]**

74.	Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 56 as though set forth in full.

75.	The Affiliate Agreement, ARPA Agreements, and all or a portion of the Transfers occurred within the four years prior to the Petition Date.

76.	On or after the date that such agreements were executed and such Transfers were made, entities to which Debtor was or became indebted include the Prepetition Creditors.

77.	Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to pay Defendant sums received from consumers under the Affiliate Agreement, which constitutes an illegal capping agreement between Defendant and Debtor.

78.	Because the referrals from Defendant to Debtor are illegal under federal and state law, they are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time of the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

///

79. Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to sell its accounts receivable to Defendant, which is illegal under federal and state law. Because they are illegal under federal and state law, they are void subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

80. The Affiliate Agreement, the ARPA Agreements, and the Transfers of Debtor's funds are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and CAL. CIV. CODE §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against its Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

81. Accordingly, the Affiliate Agreement, the ARPA Agreements, and the Transfers should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and CAL. CIV. CODE §§ 3439.04(a) and 3439.07, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and CAL. CIV. CODE § 3439.07.

### FOURTH CLAIM FOR RELIEF

**Avoidance, Recovery, and Preservation of Constructive Fraudulent Transfers Against Defendant**

**[11 U.S.C. §§ 544(b), 550, and 551; CAL. CIV. CODE §§ 3439.05, and 3439.07]**

82. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 56 as though set forth in full.

83. The Affiliate Agreement, the ARPA Agreements, and all or a portion of the Transfers occurred within the four years prior to the Petition Date.

84. The Transfers happened while Debtor:

  a. was insolvent or became insolvent as a result;

      b. was engaged or was about to engage in a transaction for which any property remaining with Debtor was of unreasonably small capital; or

      c. intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

85. Because the referrals from Defendant to Debtor are illegal under federal and state law, the agreements are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

86. Because the sale of the accounts receivable from Debtor to Defendant are illegal under federal and state law, they are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

87. The Affiliate Agreement, the APRA Agreements, and the Transfers of Debtor's funds are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and CAL. CIV. CODE §§ 3439.05 and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against its Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

88. Accordingly, the Affiliate Agreement, the ARPA Agreements, and the Transfers should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and CAL. CIV. CODE §§ 3439.05 and 3439.07, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and CAL. CIV. CODE § 3439.07.

# FIFTH CLAIM FOR RELIEF

**Avoidance, Recovery, and Preservation of Preferential Transfer to Defendant in Preference Period**

**[11 U.S.C. §§ 547, 550, and 551]**

89. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 56 as though set forth in full.

90. $412,242.56 of the Transfers are Preference Transfers from Debtor to Defendant. *See* **Exhibit 10.**[3]

91. The Preference Transfers were made for, or on account of, an antecedent debt or debts owed by the LPG to Defendant, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant.

92. The Preference Transfers happened while LPG was insolvent.

93. Debtor is also entitled to the presumption of insolvency when the Preference Transfers happened pursuant to 11 U.S.C. § 547(f).

94. As a result of the Preference Transfers, Defendant recovered more than it would have received if: (i) the Debtor's case was under chapter 7 of the Bankruptcy Code; (ii) the Preference Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtor's schedules filed in the underlying Bankruptcy Case, as well as the proofs of claim that have been received to date, the Debtor's liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtor's Estate.

95. In accordance with the foregoing, the Preference Transfers is avoidable pursuant to 11 U.S.C. § 547(b), and may be recovered and preserved for the benefit of the estate pursuant to 11 U.S.C. §§ 550 and 551.

///

---

[3] $332,142.87 of the Preference Transfers were made under the name Clear Vision Financial LLC and $80,099.69 of the Preference Transfers were made under the name Liberty1 Financial.

## SIXTH CLAIM FOR RELIEF

### Turnover of Estate Property Against Defendant

### [11 U.S.C. § 542]

96. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 94 as though set forth in full.

97. Defendant has possession or control over property of the Estate in the form of the Transfers made pursuant to illegal and unenforceable agreements.

98. The Transfers are not of inconsequential value to the Estate.

99. The funds that are the subject of the Transfers are paramount to Debtor's ability to pay creditors.

100. Accordingly, Trustee is entitled to a judgment for turnover of the Transfer pursuant to 11 U.S.C. § 542.

## SEVENTH CLAIM FOR RELIEF

### Disallowance of Claims Against Defendants

### [11 U.S.C. § 502(d)]

101. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 99 as though set forth in full.

102. On July 20, 2023, Defendant filed a proof of claim as Claim No. 125 (the "Proof of Claim"), in the amount of $517,581.34.

103. Based on Defendant's conduct as set forth in paragraphs 1 through 100 the Proof of Claim and any other claims having been filed or to be filed by Defendant in the Bankruptcy case should be disallowed pursuant to 11 U.S.C. § 502(d).

## RESERVATION OF RIGHTS

104. Plaintiff reserves the right to bring all other claims or causes of action that Plaintiff may have against Defendant, on any and all grounds, as allowed under the law or in equity, including but not limited to, those claims not known by the Trustee at this time but that he may discover during the pendency of this adversary proceeding.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for a judgment as follows:

**On The First, Second, Third, and Fourth Claims for Relief:**

1. Avoiding, recovering, and preserving the Transfers against Defendant;

**On the Fifth Claim for Relief:**

2. Avoiding, recovering, and preserving the Preferences Transfers against Defendant;

**On the Sixth Claim for Relief:**

3. Ordering Defendant to immediately turn over the Transfers and/or Preference Transfers;

**On the Seventh Claim for Relief:**

4. Order disallowing Defendant's proof of claim.

**On All Claims for Relief:**

5. Awarding costs of suit incurred herein; and

6. Granting any other and further relief as the Court deems just and proper.

Dated: December 21, 2023

Respectfully submitted,

DINSMORE & SHOHL LLP

By: /s/ Sarah S. Mattingly
   Christopher B. Ghio
   Christopher Celentino
   Yosina M. Lissebeck
   Sarah S. Mattingly (pro hac vice)
*Special Counsel to Richard A. Marshack, Chapter 11 Trustee*